UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-22744-CIV-ALTONAGA/Damian

**GLOBAL PAYCARD**
**CORPORATION**,

    Plaintiff,
v.

**ONECOM LLC**, *et al.*,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, Onecom LLC, My Fast Funds, LLC, Rocket One Capital, LLC, Jeffrey Foster, Michael Park, and Michael Shvartsman's Motion for Judgment on the Pleadings [ECF No. 113], filed on December 26, 2023. Plaintiff, Global Paycard Corporation, filed a Response [ECF No. 117]; to which Defendants filed a Reply [ECF No. 122]. The Court has considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

**I. BACKGROUND**

This case arises from an alleged fraudulent scheme perpetuated by Defendants against Plaintiff between late 2019 and July 2021. (*See generally* Second Am. Compl. ("SAC") [ECF No. 80]). Plaintiff is a "paycard" company that connects employers to a way of paying their employees without a bank: employers can deposit employees' pay into an account that employees access with "paycards." (*Id.* ¶ 1).

Plaintiff entered into a five-year agreement with non-party, Cardplatforms, LLC ("CP"), in June 2015 to "manage the services connected with the paycards distributed by" Plaintiff. (*Id.* ¶

16). The agreement required CP to collect revenues generated by the paycards and pay Plaintiff a percentage of the revenues as commission for customers Plaintiff acquired. (*See id.* ¶ 1; *see also id.*, Ex. A, Prepaid Debit Card Program Management Agreement [ECF No. 80-1] 5, 17).[1] The relationship between Plaintiff and CP turned sour: on October 7, 2019, Plaintiff sent CP a demand letter requesting past due revenue payments and an independent audit (*see* SAC ¶ 19; *see also id.*, Ex. G, Letter re: Breach of Prepaid Debit Card Program Management Agreement [ECF No. 80-7] 2); and on December 25, 2019, Plaintiff formally notified CP of its intent to terminate the agreement when the five-year term lapsed in June 2020 (*see* SAC ¶ 21; *id.*, Ex. I, Email re: Written Notification [ECF No. 80-9] 2).

Meanwhile, CP was experiencing financial difficulties and defaulted on promissory notes it owed to investors. (*See* SAC ¶ 17; *see generally id.*, Ex. D, Third Amendment to Series Promissory Notes with Warrants [ECF No. 80-4]). CP's investors formed a new company, CP Assets Liquidation, LLC ("CPAL") and sent CP a formal notice of default and acceleration in January 2020. (*See* SAC ¶¶ 36–37; *see also id.*, Ex. S, Notice of Default & Acceleration [ECF No. 80-19] 2–3). On February 6, 2020, CP transferred many of its assets to CPAL, including its agreement with Plaintiff. (*See* SAC ¶ 32; *id.*, Ex. R, Approval of Assignment [ECF No. 80-18] 2). That same day, CPAL executed an Asset Purchase Agreement with a new company, Onecom LLC. (SAC ¶¶ 48–52; *see generally id.*, Ex. AA. Asset Purchase Agreement [ECF No. 80-27]). Onecom LLC's members are My Fast Funds, LLC (wholly owned by Foster) and Rocket One Capital, LLC (wholly owned by Shvartsman). (*See* SAC ¶ 23). Plaintiff was never told of these developments and only learned of them after the fact. (*See id.* ¶¶ 42, 55).

---

[1] The Court relies on the pagination generated by the Case Management/Electronic Case Files system, which appears as a header on all filings.

Because Plaintiff had previously notified CP it was not renewing their agreement, Onecom told Plaintiff that it would have to sign a new agreement with Onecom in early 2020. (*See id.* ¶¶ 58, 60; *see also id.*, Ex. FF, Letter re: Wind-Down of Kittrell Paycard Programs [ECF No. 80-32] 2). But Onecom still continued maintaining — and receiving revenues from — Plaintiff's accounts from January 2020 to July 2020 without making the accompanying commission payments to Plaintiff. (*See* SAC ¶¶ 21, 58–60, 63, 67).

On February 8, 2021, Plaintiff sued Onecom in Texas state court. (*See generally* Notice of Removal [ECF No. 1]). Onecom removed the case to the Northern District of Texas (*see id.*); after Plaintiff added My Fast Funds, Rocket One Capital, Foster, Park,[2] and Shvartsman as Defendants, the court granted the new Defendants' request to transfer the case to this District (*see* July 24, 2023 Mem. Op. & Order [ECF No. 73]).

Plaintiff asserts seven claims for relief against Defendants. (*See generally* SAC). First, it brings three quasi-contractual claims against a combination of Defendants: money had and received (Count I) against Onecom, Rocket One Capital, My Fast Funds, Shvartsman, and Foster (*see id.* ¶¶ 76–80); and quantum meruit (Count II) and contract-implied-in-law (Count III) against Onecom (*see id.* ¶¶ 81–91). Plaintiff also brings fraud (Count IV) and conspiracy (Count V) claims against Shvartsman, Foster, and Park. (*See id.* ¶¶ 92–121). Next, Plaintiff alleges a claim under the Texas Theft Liability Act (Count VI) against Onecom, Shvartsman, Foster, and Parks. (*See id.* ¶¶ 120–26). Finally, Plaintiff asserts a claim of participatory and vicarious liability (Count VII) against all Defendants. (*See id.* ¶¶ 127–129).

---

[2] Park was an officer of CP and Onecom. (*See* SAC ¶ 128; *see generally id.*, Exs. R, Q, Emails from Michael Park [ECF Nos. 80-16–80-17]).

Defendants filed Answers and Affirmative Defenses [ECF Nos. 107–112] and now seek judgment on the pleadings, asserting Plaintiff has failed to join an indispensable party or state claims for relief. (*See generally* Mot.). The parties agree that while Plaintiff initially brought claims under Texas state law, Florida state law should apply. (*See* Mot. 10; Resp. 8). Plaintiff requests leave to amend its Texas statutory claims to state analogous Florida statutory claims (*see* Resp. 8); Defendants object to this request (*see* Reply 8).

## II. STANDARDS

***Choice of Law***. "[A] federal district court sitting in diversity must apply the choice of law rules of the forum state." *Clanton v. Inter.Net Glob., L.L.C.*, 435 F.3d 1319, 1323 (11th Cir. 2006) (alteration added; quotation marks and citation omitted). Because the Court is exercising diversity jurisdiction (*see* SAC ¶¶ 6–13), and since the Court is in Florida, it applies Florida's choice-of-law rules. Florida employs the "significant relationships test" to determine which state's law applies. *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (quotation marks and citation omitted). Thus, the Court must determine where the injury occurred, "where the conduct causing the injury occurred," where the parties are from, and the place where the parties' relationship "is centered." *Id.* (quoting Restatement (Second) of Conflict of Laws § 145 (1971)).

***Judgment on the Pleadings***. The standard for reviewing a motion for judgment on the pleadings is the same as a motion to dismiss: whether the complaint states claims for relief. *See Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002)). A plaintiff's complaint must include "'allegations plausibly suggesting . . . the plaintiff's entitlement to relief.'" *Id.* (alteration added; quoting *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1334 (11th Cir. 2015); quotation marks omitted). The Court

4

"must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the non-movant." *GEICO Marine Ins. Co. v. Baron*, 426 F. Supp. 3d 1263, 1264 (M.D. Fla. 2019) (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)); *see also Sun Life Assurance Co. of Can.*, 904 F.3d at 1207. "Judgment on the pleadings is proper when no issues of material fact exist[.]" *U.S. Sugar Corp. v. Com. & Indus. Ins. Co.*, 644 F. Supp. 3d 1057, 1062 (S.D. Fla. 2022) (alteration added; citation and quotation marks omitted).

### III.  DISCUSSION

The Court first briefly addresses choice of law before turning to Defendants' arguments for judgment in their favor on each of Plaintiff's claims.

**A.     Choice of Law**

The parties state that Florida state law should apply. The Court agrees. Any injury Plaintiff suffered occurred in Florida, where Onecom's offices are located, and the individual Defendants are domiciled. (*See* SAC ¶¶ 7–12, 31). It follows that the parties' relationship was centered in Florida. True, Plaintiff's domicile is in Texas (*see id.* ¶ 6), but that is the sole connection to Texas. Any money held by Defendants is being held in Florida; and any alleged fraud, theft, or conspiracy occurred in Florida. It follows that Florida law should apply to Plaintiff's claims.

The parties briefed Plaintiff's equitable claims (Counts I–V, VII) under Florida law (*see* Mot. 9–17; Resp. 8–18), so the Court evaluates the adequacy of Plaintiff's pleading as to those claims for relief. Plaintiff's Texas statutory law claim, however, is due to be dismissed. The Court acknowledges that Plaintiff included a request to amend the SAC to convert the claim to one under the analogous Florida statute in its Response to the Motion. Defendants argue that judgment should nevertheless be entered against Plaintiff for its "failure to recognize that it should have corrected its pleading to assert Florida claims." (Reply 8). The Court agrees: the deadline to

5

amend pleadings passed long ago (*see* Order Setting Bench Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge [ECF No. 86] 1), and Plaintiff has made no attempt to demonstrate its diligence in meeting the deadline. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008) ("We have recognized that Rule 16[b]'s good cause standard 'precludes modification [of the scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension.'" (first alteration added; second alteration in original; citations omitted)); *Roberson v. BancorpSouth Bank, Inc.*, No. 12-0669, 2013 WL 4870839, at *2 (S.D. Ala. Sept. 12, 2013) ("Diligence, not lack of prejudice, is the touchstone of the Rule 16(b)(4) inquiry." (collecting cases)).

Plaintiff's claim under the Texas Theft Liability Act (Count VI) is thus dismissed.

**B.     Judgment on the Pleadings**

Defendants assert two main arguments in favor of a judgment on the pleadings: one, that Plaintiff has failed to join an indispensable party (*see* Mot. 6–8); and, alternatively, that no claims for relief are stated (*see id.* 10–17, 19–22). The Court addresses each issue in turn.

1. Failure to Join an Indispensable Party (All Counts)

Defendants first argue that the case must be dismissed with prejudice due to Plaintiff's failure to join an indispensable party, CP. (*See* Mot. 6–8). According to Plaintiff, it has sued Defendants for their own obligations and only seeks relief from Defendants, so CP does not have to be joined. (*See* Resp. 3–8). The Court agrees with Plaintiff.

Federal Rule of Civil Procedure 19 controls the Court's analysis of whether failure to join a party requires dismissal of an action. "Rule 19 is a two-step inquiry." *Molinos Valle Del Cibao,*

*C. por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011). At step one, "the court must determine whether the person in question should be joined[,]" *i.e.*, if that party is "necessary[.]" *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999) (alterations added; citations and quotation marks omitted). A party is necessary if (1) the court cannot accord complete relief among existing parties; or (2) the absent party claims an interest in the subject of the action and disposing of the action in that party's absence may impair that party's ability to protect its interest or leave an existing party subject to a substantial risk of incurring double or inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1). This determination is "'pragmatic[,]'" and "'the effect on the parties and the litigation[]' control[s]." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (alterations added; quoting *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982)).

At step two, if the party is necessary "but cannot be joined . . . Rule 19(b) provides a list of factors to 'determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'"[3] *Lama*, 633 F.3d at 1344 (alteration added; quoting Fed. R. Civ. P. 19(b)). "Rule 19 is not a mechanical formula . . . . The Court is vested with substantial discretion in making the determination." *Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1318 (S.D. Fla. 2008) (alteration in original; quotation marks and citation omitted).

Defendants first insist that without joining CP, the Court cannot accord complete relief among the existing parties. (*See* Mot. 6 (citing Fed. R. Civ. P. 19(a)(1)(A))). Defendants are

---

[3] The Rule 19(b) factors include: "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;" "the extent to which any prejudice could be lessened or avoided by" the court implementing protective provisions or shaping the relief; "whether a judgment rendered in the person's absence would be adequate;" and if the plaintiff would have an alternate "adequate remedy." Fed. R. Civ. P. 19(b).

7

"correct that in cases challenging [t]he enforceability or validity of a contract, joinder of all parties to that contract will typically be required." *Off. of the Att'y Gen. v. Smartbiz Telecom LLC*, --- F. Supp. 3d --- No. 1:22-cv-23945, 2023 WL 5491835, at *4 (S.D. Fla. Aug. 23, 2023) (alteration added; citation and quotation marks omitted).

But here, the enforceability of a contract is not being challenged. Instead, Plaintiff alleges a separate quasi-contractual relationship with Defendants. (*See* SAC ¶¶ 76–91; Resp. 4). Plaintiff seeks relief for the period after which it alleges CP transferred its agreement to Onecom. (*See* SAC ¶¶ 21–22). Taking Plaintiff's allegations as true, the relationship between Plaintiff and Defendants was not governed by Plaintiff's agreement with CP but rather by an implied contract between Plaintiff and Onecom. (*See id.* ¶¶ 22, 87–89).

Defendants also argue that the underlying contract controls what relief Plaintiff may be entitled to. (*See* Mot. 7–8 (stating "it is difficult to understand how this Court could determine the amount of the payments purportedly owed without Plaintiff relying on the contract between Plaintiff and CP")). But "the fact that a nonparty holds evidence germane to the outcome of a case does not mean that it should be joined." *HDR Eng'g, Inc. v. R.C.T. Eng'g, Inc.*, No. 08-81040-Civ, 2010 WL 2402908, at *3 (S.D. Fla. June 15, 2010) (citations omitted). Thus, any relief may be accorded among the existing parties.

Alternatively, Defendants argue the second part of Rule 19(a) applies, and CP's interests will be impaired or impeded if the suit continues without CP joined as a party. (*See* Mot. 7–8 (citing Fed. R. Civ. P. 19(a)(1)(b))). This argument also fails.

Plaintiff has no claims against CP; in fact, it admits it was paid in full for its work with CP. (*See* SAC ¶ 21). To be sure, if Plaintiff has a claim against CP, as Defendants suggest, it may have been logical for it to include CP as a defendant in this case. But even if Plaintiff has a claim against

CP, CP would not automatically be a necessary party. "A plaintiff need not join all the parties against whom it may have a cause of action into one suit[.]" *HDR Eng'g, Inc.*, 2010 WL 2402908 at *4 (alteration added; collecting cases); *see also Smartbiz Telecom LLC*, 2023 WL 5491835, at *4 (even if a nonparty "may have also committed wrongdoing[,]" that "does not make them a necessary party" (alteration added; citation omitted)); *Scimone v. Carnival Corp.*, 720 F.3d 876, 884 (11th Cir. 2013) (stating "plaintiffs, as masters of their complaints, ordinarily may choose to include or omit parties" (citation omitted)).

In sum, CP is not a necessary party. Since Defendants have not carried their burden under the first step — Rule 19(a) — to show that CP should be joined as a party, the Court's analysis stops there.

      2. <u>Quasi-Contractual Claims (Counts I, II, and III)</u>

While Plaintiff states three separate implied contract claims (*see* SAC ¶¶ 76–91), these claims rise and fall together. "To describe the cause of action encompassed by a contract implied in law, Florida courts have synonymously used a number of different terms — quasi contract, unjust enrichment, restitution, constructive contract, and quantum meruit." *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (quotation marks and footnote call numbers omitted). The Court thus addresses Counts I through III together.

Defendants bring two challenges to these claims: one, that judgment must be entered on Plaintiff's claims because the claims incorporate the underlying contract with CP; and two, even if the Court finds the contract is not incorporated, Plaintiff fails to state claims for relief. (*See* Mot. 10–11).

> a. *Incorporation of Underlying Contract*

Regarding Defendants' contention that the first three claims incorporate an underlying contract, again, the Court must take Plaintiff's factual allegations as true. *See Sun Life Assurance Co. of Can.*, 904 F.3d at 1207. Plaintiff alleges it never had an express contract with Defendants and instead was told it would need to enter into a new agreement with Onecom. (*See* SAC ¶ 60). Yet, Onecom allegedly continued to perform work and collect revenues from January to July 2021 without paying Plaintiff its share. (*Id.*). Plaintiff has at least created an issue of material fact as to the existence of a contract with Defendants, making judgment on the pleadings inappropriate. *See U.S. Sugar Corp.*, 644 F. Supp. 3d at 1062; *cf. Devault v. Isdale*, No. 15-cv-135, 2016 WL 1305062, at *4 (M.D. Fla. Apr. 4, 2016) (collecting cases denying summary judgment because of "a question of material fact as to the existence of a contract").

Defendants insist that the express contract between Plaintiff and CP governs Plaintiff's quasi-contractual claims, citing *Loginov v. Samoilova*, 345 So. 3d 372 (Fla. 3d DCA 2022), and *Doral Collision Center, Inc. v. Daimler Trust*, 341 So. 3d 424 (Fla. 3d DCA 2022). (*See* Mot. 11). There are key differences between those cases and this one.

In *Loginov*, there was an express contract governing a loan for which the plaintiff was seeking equitable relief. *See* 345 So. 3d at 375. Unlike in *Loginov*, Plaintiff is not asserting an equitable claim for the period covered by its contract with CP. According to Plaintiff, no contract governed its relationship with Defendants. Plaintiff gave notice to end its contract with CP in December 2019, with the agreement ending in June 2020. (*See* SAC ¶ 21). Unlike the plaintiff in *Loginov*, Plaintiff is seeking relief from different parties for work completed outside the timeframe of an express contract it had with a non-party. *See* 345 So. 3d at 375.

And in *Doral Collision Center*, the plaintiff alleged both breach of contract *and* unjust enrichment theories against the same parties, where it was clear that an express contract existed. *See* 341 So. 3d at 430. Plaintiff here only seeks relief under an equitable theory, and the existence of an express contract between the parties is in dispute. (*See generally* SAC).

      *b. Quasi-Contract Elements*

Defendants next argue that Plaintiff fails to state quasi-contractual claims. (*See* Mot. 11–12). To state a quasi-contractual claim, a plaintiff "must allege 'a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.'" *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022) (quoting *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004); other citations omitted). Plaintiff alleges: (1) it generated funds from its paycard program; (2) Onecom received those funds and accepted Plaintiff's services; and (3) Onecom had reasonable notice that Plaintiff expected to be paid for its services. (*See* SAC ¶¶ 78, 81–85, 88–89). Defendants argue this is insufficient because Plaintiff cannot allege it provided any Defendant a direct benefit. (*See* Mot. 11).

To plausibly state its quasi-contractual claims, Plaintiff must allege it "*directly* confer[red] a benefit to the defendant." *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (alteration and emphasis added; citation omitted); *see also Chiquita Fresh N. Am., L.L.C. v. Port Everglades Terminal, LLC*, 372 So. 3d 277, 280–81 (Fla. 4th DCA 2023) (collecting cases). A direct benefit cannot pass through another party before reaching the defendant. *See, e.g.*, *Peoples Nat'l Bank of Com. v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996); *Kopel*, 229 So. 3d at 818 (citation omitted).

11

CASE NO. 23-22744-CIV-ALTONAGA/Damian

Regarding Plaintiff's claims against Rocket One Capital, My Fast Funds, Shvartsman, and Foster, if any benefit was conferred upon those Defendants, that benefit was passed along to them from Onecom, not directly from Plaintiff. Plaintiff does not allege a direct benefit was conferred on those Defendants. Thus, judgment on the pleadings is appropriate on the quasi-contractual claims against Rocket One Capital, My Fast Funds, Shvartsman, and Foster.

But Plaintiff's claim against Onecom is different. Plaintiff alleges it *directly* benefited Onecom by creating business that led to Onecom earning and retaining revenue. (*See* SAC ¶¶ 78, 81–85, 88–89). Plaintiff plausibly alleges that Onecom appreciated that benefit (*see id.* ¶ 55), and it would be inequitable for Onecom to retain the benefit of Plaintiff's work (*see id.* ¶¶ 21, 22, 83–85). Consequently, judgment on the pleadings is denied on Counts I, II, and III against Onecom.

3. Fraud (Count IV)

Defendants next seek judgment on the pleadings on Plaintiff's fraud claim, asserted against Shvartsman, Foster, and Park. To state a fraud claim under Florida law, a "plaintiff must allege (1) that [the] defendant made a representation on which [the] plaintiff was meant to act, (2) that the representation was false and [the] defendant knew that fact, and (3) that [the] plaintiff relied on the representation to his injury." *Am. Int'l Land Corp. v. Hanna*, 323 So. 2d 567, 569 (Fla. 1975) (alterations added; footnote call number omitted), *cited with approval in Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 838 (Fla. 2022).

Furthermore, a claim of fraud claim must meet Rule 9(b)'s heightened pleading standards, which require a plaintiff to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b) (alteration added). "[U]nder Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th

Cir. 2008) (alteration added). "At bottom, the purpose of particularity pleading is to alert defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior." *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019) (citation omitted).

Plaintiff plausibly alleges a fraud claim against Shvartsman, Foster, and Park. Before addressing the detailed fraud allegations, the Court dispenses with Defendants' argument that Plaintiff has imprecisely pled a particular version of fraud, a fraudulent concealment claim, which requires the allegation that Defendants owed Plaintiff a duty. (*See* Mot. 13–14 (citing *Philip Morris USA Inc. v. Principe*, 337 So. 3d 821, 827 n.7 (Fla. 3d DCA 2021); *Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So. 2d 253, 257 (Fla. 2d DCA 1994))). Plaintiff explains that it does not allege a fraudulent concealment claim, but rather identifies direct statements that were false representations. (*See* Resp. 16–17). Under Florida law, "[f]raud liability can . . . be premised on statements that are misleading because they omit other material information." *Prentice*, 338 So. 3d at 838 (alterations added). The Court thus evaluates Plaintiff's fraud claim as such, not as a fraudulent concealment claim.

Turning then to an examination of the fraud claim, Plaintiff alleges specific circumstances in which each Defendant either withheld material information or made misleading statements to Plaintiff. (*See* SAC ¶¶ 96, 99, 107, 110–12). Shvartsman misrepresented that Onecom had purchased the assets of CP to continue the business, rather than, as Plaintiff alleges, its true purpose to liquidate its assets. (*See id.* ¶¶ 110–11). Foster told Plaintiff's CEO, Mary Kittrell, that Plaintiff would be paid for revenues going forward in a phone call in November 2019 (*see id.* ¶ 96); failed to disclose CP's financial difficulties to Plaintiff (*see id.* ¶ 99); and transferred the agreement between CP and Plaintiff to CPAL without notice to Plaintiff (*see id.* ¶ 107). Finally, Park misled

13

Plaintiff by telling it that Onecom would maintain services and implement winddown activities that Onecom either ignored or delayed. (*See id.* ¶ 112).

Plaintiff further alleges that, based on the series of business dealings leading up to those omissions or statements, Shvartsman, Foster, and Park knew their statements or omissions were at least misleading. (*See id.* ¶¶ 96, 98–100, 107–112). Plaintiff is allowed to make these intentionality allegations "generally[.]" *Mizzaro*, 544 F.3d at 1237 (alteration added). Finally, Plaintiff alleges it relied on these representations to its detriment, as it would have sought an alternative business counterpart, and the delay led to lost revenues. (*See* SAC ¶¶ 113–14).

While the SAC is not a model of clarity, taking its allegations as true and drawing all reasonable inferences in its favor, Plaintiff plausibly alleges a fraud claim with the particularity required by Rule 9(b).

4. Conspiracy (Count V)

Next, Defendants argue that Plaintiff's conspiracy claim is improperly premised on "information and belief," which they argue is insufficient. (*See* Mot. 16–17). Contrary to Defendants' assertions, "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief" when that belief is "based on factual information that makes the inference of culpability plausible." *Assoc. Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*, No. 12-80393-Civ, 2013 WL 1149668, at *6 (S.D. Fla. Mar. 19, 2013) (alteration added; citation and quotation marks omitted). Plaintiff offers factual information upon which the conspiracy claim is based. The Court explains.

"A civil conspiracy claim requires: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the

conspiracy." *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015) (citation omitted). "'The gist of a civil action for conspiracy is not the conspiracy itself but the civil wrong which is alleged to have been done pursuant to the conspiracy.'" *Id.* (quoting *Loeb v. Geronemus*, 66 So. 2d 241, 243 (Fla. 1953)).

Plaintiff's conspiracy allegations are like its fraud allegations, although Plaintiff adds that Shvartsman, Foster, and Park had a "meeting of the minds" and "worked in concert" to plan and implement a fraudulent scheme. (SAC ¶ 119). For purposes of a conspiracy claim, "[a]n agreement between two or more parties occurs when there is an express or implied agreement of two or more persons to engage in a criminal or unlawful act." *Gilison v. Flagler Bank*, 303 So. 3d 999, 1004 (Fla. 4th DCA 2020) (alteration added; citations omitted).

Plaintiff alleges an implied agreement was reached to perpetuate a fraudulent scheme to continue to take Plaintiff's revenues. In their briefing, Defendants ignore the allegations that Plaintiff makes concerning the coordination of the asset transfer, communications with Plaintiff regarding the asset transfer and future work, and public information released about Onecom. (*See* SAC ¶¶ 95–112, 119). "Without further elaboration from the Defendants, the Court is hard pressed to conclude that this was all done without any kind of agreement that plausibly supports a civil conspiracy." *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1351 (S.D. Fla. 2021).

"A conspirator only needs to know of the scheme and assist in it in some way to be held responsible for all the acts of his conspirators." *Gilison*, 303 So. 3d at 1004 (citations omitted). Here, Shvartsman, Foster, and Park allegedly knew of the scheme and performed acts to assist the conspiracy to commit a fraud. (*See supra* Section B.3; SAC ¶¶ 95–112, 119). Plaintiff's damages are its lost revenues. (*See* SAC ¶¶ 114, 121). Thus, Defendants are not entitled to judgment on the pleadings as to Count V.

5. Participatory and Vicarious Liability (Count VII)

Finally, Plaintiff brings a participatory and vicarious liability claim. (*See* SAC ¶¶ 127–129). "A general principle of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising them." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (citation omitted). In this claim, Plaintiff seeks to "pierce the corporate veil" and "disregard this corporate fiction and hold the corporation's owners liable[.]" *Lama*, 633 F.3d at 1349 (alteration added; quotation marks and citation omitted); *see also Hernandez v. MB Yachts, LLC*, No. 22-cv-22135, 2023 WL 4972847, at *4 (S.D. Fla. Feb. 10, 2023) (Under Florida law, "it is possible to pierce an LLC's corporate veil under certain circumstances to hold individual members or managers personally liable.").

Defendants argue that Plaintiff's claim of participatory and vicarious liability "appears to be seeking to pierce the corporate veil of three separate corporate entities in one count based on nothing more than conclusory allegations[.]" (Mot. 19 (alteration added)). The Court agrees.

> To establish a claim for piercing the corporate veil under Florida law, a plaintiff must allege that "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form [was] used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant."

*Alvarez Galvez v. Fanjul Corp.*, 533 F. Supp. 3d 1268, 1284 (S.D. Fla. 2021) (alteration in original; quoting *Lama*, 633 F.3d at 1349). "The corporate veil will be pierced only in exceptional circumstances[.]" *Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, No. 15-62688-Civ, 2020 WL 5757083, at *3 (S.D. Fla. Sept. 28, 2020) (alteration added; applying Florida law). "'[E]ven if a corporation is merely an alter ego of its dominant shareholder or shareholders, the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully

maintained.'" *Gasparini*, 972 So. 2d at 1055 (alteration in original; quoting *Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000)).

Plaintiff's factual allegations supporting this claim are woefully deficient. Plaintiff does not plausibly allege that Shvartsman, Foster, and Park were acting as alter egos for the companies. (*See generally* SAC). Instead, Plaintiff alleges that Shvartsman, Foster, and Park were merely acting as the companies' agents and vice-principals. (*See id.* ¶ 128). Plaintiff does not plead that Shvartsman, Foster, or Park dominated and controlled the LLCs to such an extent that the LLCs' independent existence was non-existent. (*See generally id.*). Nor is the fact that the LLCs only had one member each sufficient to pierce the corporate form. (*See id.* ¶¶ 23, 128).

Since Plaintiff includes no facts explaining that the corporate form of any LLC was not lawfully maintained, the allegations are insufficient. *See Gasparini*, 972 So. 2d at 1055. For the foregoing reasons, judgment is appropriate as to Count VII.

### IV.  CONCLUSION

Being fully advised, it is

**ORDERED AND ADJUDGED** that Defendants, Onecom LLC, My Fast Funds, LLC, Rocket One Capital, LLC, Jeffrey Foster, Michael Park, and Michael Shvartsman's Motion for Judgment on the Pleadings **[ECF No. 113]** is **GRANTED in part** and **DENIED in part**.

**DONE AND ORDERED** in Miami, Florida, this 21st day of February, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record